IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-02572-REB-MJW

TERRY MOBLEY,

Plaintiff,

v.

PATRICK R. DONAHOE, Postmaster General United States Postal Service (Western
Area),
UNITED STATES POSTAL SERVICE,
YVONNE RODRIQUEZ,
DEPARTMENT OF LABOR,
HILDA SOLIS, Secretary of Labor,
SUSAN DUCE,
ROBIN DARLING, and
NANCY RICE,

Defendants.

---

**RECOMMENDATION ON
DEFENDANT'S [Patrick R. Donahoe] MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6)
(Docket No. 42)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by Judge Robert E. Blackburn on January 4, 2011.  (Docket

No. 16).

**PLAINTIFF'S ALLEGATIONS**

The operative pleading is the pro se plaintiff's second Amended Title VII

Complaint (Docket No. 28) in which plaintiff seeks declaratory, injunctive, and monetary

relief and asserts the following.  Plaintiff, a male African-American, is a self-professed "whistle-blower" who was employed as a  postal clerk for the U.S. Postal Service ("USPS") from September 12, 1994, to September 17, 2007.  He was discriminated against because of race, color, sex, and disability as a result of a failure to promote, demotion/discharge from employment, and failure to accommodate disabilities reasonably.

Prior to 2007, plaintiff complained to Regional Manager Ellis Bygione that he believed he was being subjected to harassment and hostile treatment because of his race and disability, but Bygione took no corrective action.  At that time, plaintiff also informed Bygione about the quid pro quo sexual harassment and other types of discrimination against black female employees, but Bygione reacted violently, terminated the meeting, and kicked plaintiff out of the conference room.  Although plaintiff had requested that the door be closed during that meeting, it was left open, and when plaintiff exited the room, he saw the plant manager (Roland Fuentes) and another white male manager sitting next to the door listening to the conversation.  In late 2006, plaintiff complained to Fuentes that he was being harassed and subjected to subjective and unwarranted criticism of a racial nature for reporting quid pro quo sexual harassment.  In response, plaintiff was subjected to abusive racial and disability harassment.

In 2007 plaintiff filed a racial discrimination complaint on behalf of fellow USPS employee Melissa Goodson against Yvonne Rodriquez, as a result of which plaintiff was placed under increased scrutiny and denied access to ADA accommodations and workers compensation benefits for his work-related injuries.  While Rodriquez subjected

plaintiff's work to inordinately close scrutiny, she essentially ignored the work of the others in the Automation Unit.  Management approved without criticism work performed by plaintiff's white co-workers that was essentially similar or worse in quality than plaintiff's work.

In May 2007 Rodriquez informed plaintiff that an informal EEO complaint he filed against white co-workers for racial comments and threats was not going to be addressed because plaintiff had simply misunderstood the white co-worker's intent in making the racist comments.  Rodriquez again failed to take any action to investigate or rectify his complaint.  Her investigation, the lack of subsequent disciplinary action, and the internal EEO appeals process were tainted, biased, and/or implemented in a discriminatory manner and had a significant negative impact on minority employees' claims because white employees obtain more favorable results.  Plaintiff's work was again subjected to intensive scrutiny, while other clerks routinely made errors in their work which were ignored and did not affect their performance.  Plaintiff did not receive a response to his written rebuttal to the termination of that EEO complaint.

In June 2007 Rodriquez told a manager that "blacks did not have the brains or mental capacity to do the simplest job."

In an EEO complaint in June 2007, plaintiff made allegations of quid pro quo sexual harassment and misconduct in the Human Resources Division at the General Mail Facility ("GMF") in Denver.  More specifically, he alleged that several white male supervisors and human resource managers accosted indigent black female job applicants and employees with offers of employment if they submitted to sexual favors. Plaintiff was the only black employee who challenged such practices.  The USPS never

4

denied or investigated plaintiff's claims and refused to address the issues with the EEO

department.  Plaintiff informed the USPS of these actions on at least ten separate

occasions.  Because of his history of filing EEO claims to protect himself and other

employees, in June 2007 his work was subjected to a far more intense level of scrutiny

than the others at the GMF office, and his work, which previously had been acceptable,

was questioned by his supervisors with subjective and unjustified criticism.

In July 2007 plaintiff was injured at work, suffering injury to his knees.  When he

requested permission to see his primary care physician for treatment, he was told that

he would not be allowed to file a report of traumatic injury (CA-1) if he did not see a

postal doctor.  When plaintiff declined to see a postal doctor, the supervisors refused to

file a CA-1 on his behalf.  Plaintiff sought leave to treat the injury, and since the USPS

had unlawfully refused workers compensation coverage, he was forced to rely on FMLA

leave coverage.  He was off work from July to September 2007 due to his injury.

Rodriquez had previously denied plaintiff coverage for other work-related traumatic

injuries, which was intentional racial and disability discrimination in retaliation for

plaintiff's prior EEO activities against Rodriquez.

On September 10, 2007, the USPS instituted a plan of removal against plaintiff

by mailing a letter of warning to plaintiff's old address even though he had sent them a

change of address form on August 15, 2007, and despite an agreement that plaintiff

would be contacted at his e-mail address regarding any issues surrounding his case.

He never received the warning letter or the later letter of termination, so he was denied

essential due process rights.  Before then, in an effort to avoid further retaliation by

Rodriquez, plaintiff was granted a requested transfer from Denver to the Washington,

D.C., area, but once plaintiff arrived in Washington, D.C., he was informed that there was no current transfer in his name, which is further evidence of the retaliatory nature of the USPS's actions.

Plaintiff filed another EEO complaint in January 2009 regarding his 2008 workers compensation claim.  Even though the USPS knew his history with Rodriquez, she was assigned to handle the claim.  Rodriquez interfered with the claim and withheld important material information from the Department of Labor, which was post-employment discrimination done in furtherance of her on-going retaliation for his filing four EEO complaints against her.  Plaintiff's claim for benefits under FECA was denied. Plaintiff's hearing process was implemented in a discriminatory, biased, and unfair manner, and subsequently the evidence and information presented to the EEO Office of Federal Operation by USPS and Rodriquez was incomplete and misleading, including the implication that plaintiff had not reported his on-the-job injuries and the lack of knowledge of his physical limitations.  In addition, the USPS did not exchange or provide plaintiff with the specific facts and information pertaining to the case before the Office of Federal Operations.

"Defendants unjustifiably criticized and targeted Plaintiff's job for termination, constructively terminated his employment, and gave Plaintiff a poor job reference, and undertook each of the acts adversely affecting Plaintiff as alleged above, in reprisal for Plaintiff's opposition of practices made illegal by Title VII and because Plaintiff filed complaints of discrimination."  (Docket No. 28 at 9).  Plaintiff has lost income and benefits and has been unable to secure comparable employment.

Plaintiff brings claims under Title VII, the Rehabilitation Act, the Americans with

6

Disabilities Act ("ADA"), and 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as well as claims of breach of contract, promissory estoppel, negligence, intentional infliction of emotional distress, intentional interference with a contractual relationship, and state and federal constitutional violations, including conspiracy.

In the Original Complaint (Docket No. 1-1), plaintiff listed only two defendants, John Potter, Postmaster General of the USPS, and Hilda L. Solis, United States Secretary of Labor, who were served prior to the action being transferred to this District from the Eastern District of Virginia.  (See Docket No. 1 - documents transferred from the Eastern District of Virginia).  Defense counsel entered his appearance for defendants Potter and Solis.  (Docket Nos. 8 and 12).  However, in the "ADDITIONAL PARTIES" section of the First and Second Amended Complaints (Docket Nos. 3 and 28), plaintiff lists as defendants not only defendants Potter (who has since been substituted by Patrick R. Donohue, the current Postmaster General - see Docket No. 41) and Solis, but the USPS, Yvonne Rodriquez (an employee of the USPS), the Department of Labor ("DOL"), Susan Duce (an employee of the DOL), Robin Darling (an employee of the DOL), and Nancy Rice (an employee of the USPS).  Aside from Potter and Solis, however, none of the other defendants have been served.  Furthermore, after the First Amended Complaint (Docket No. 13) was filed, defendant Solis was inexplicably terminated on the docket as a party (see Docket Entry dated December 17, 2010).  Filings made by the defense have since reflected merely defendant Potter as the sole defendant (see, e.g., Proposed Scheduling Order - Docket No. 33, Proposed Final Pretrial Order - Docket No. 61).

## DEFENDANT'S MOTION TO DISMISS

Now before the court for a report and recommendation is Defendant Patrick Donahoe's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  (Docket No. 42).  Plaintiff filed a Response (Docket No. 48), defendant filed a Reply (Docket No. 49), and the court has granted plaintiff leave to file his sur-reply (Docket No. 53).  The court has very carefully considered these motion papers as well as the court's file and applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings, conclusions of law, and recommendation.

Defendant seeks dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds:  (1) plaintiff does not have standing to bring an ADA claim, (2) plaintiff failed to exhaust administrative remedies with respect to his disability discrimination claim, (3) plaintiff failed to exhaust administrative remedies with respect to his Title VII claim, (4) plaintiff's Title VII claims are untimely, (5) plaintiff's contract and quasi-contractual claims are preempted, (6) plaintiff failed to exhaust his tort claims, (7) plaintiff's state law constitutional claims are preempted, (8) plaintiff's constitutional claims arising under the U.S. Constitution should be dismissed, and (9) plaintiff's claims against defendants DOL, Solis, Duce, Darling, and Rice should be dismissed because they are improper parties.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes

conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do . . . ." Bell Atlantic Corp., 550 U.S. at 555 (citations

omitted). "Factual allegations must be enough to raise a right to relief above the

speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from

conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of

the pleaded claims is insufficient; the complaint must give the court reason to believe

that *this* plaintiff has a reasonable likelihood of mustering factual support for *these*

claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)

(quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Pursuant to Fed. R. Civ. P. 12(d), "[i]f, on motion under Rule 12(b)(6) . . . ,

matters outside the pleadings are presented to and not excluded by the court, the

motion must be treated as one for summary judgment under Rule 56.  All parties must

be given a reasonable opportunity to present all the material that is pertinent to the

motion."  "However, notwithstanding the usual rule that a court should consider no

evidence beyond the pleadings in a Rule 12(b)(6) motion to dismiss, 'the district court

may consider documents referred to in the complaint if the documents are central to the

plaintiff's claim and the parties do not dispute the documents' authenticity.'" Alvardo v.

KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting Jacobsen v. Deseret

Book Co., 287 F.3d 936, 941 (10th Cir. 2002)).

Here, attached to defendant's motion to dismiss are the following documents: (1)

the USPS Dismissal of Formal EEO Complaint dated May 28, 2009 (Docket No. 42-1);

10

(2) the EEOC denial and right-to-sue letter dated January 20, 2010, including the

previous affirmance of the agency's dismissal of the complaint (Docket No. 42-2); and

(3) the fifteen-page USPS EEO Final Agency Decision dated November 28, 2007

(Docket No. 42-3).  The second listed document (Docket No. 42-2) was attached to the

Second Amended Complaint (Docket No. 28 at 23-25).  With his Response (Docket No.

48), plaintiff filed some documents which purportedly concern his response to

defendant's argument concerning the statute of limitations (Docket No. 48 at 18-22).

Defendant then countered with attachments to his Reply, namely, one of the documents

filed with his motion (Docket No. 49-1 - the May 28, 2009 USPS Dismissal of Formal

EEO Complaint) and three affidavits (Docket Nos. 49-2, 49-3, and 49-4).  Plaintiff then

tendered further documentation with his proposed Sur-Reply (Docket No. 53 at 13-17).

Given these submissions, which have been considered by this court, defendant's

motion is more properly one for summary judgment, particularly with respect to the

defendant's arguments concerning exhaustion and the statute of limitations.  Upon

review of the filings, the court finds that the parties have been given a "reasonable

opportunity" to present pertinent material as required by Rule 12(d).  See Schooler v.

Astrue, 2011 WL 1233104, at *1 n.2 (S.D. Tex. Mar. 31, 2011).

Plaintiff is proceeding *pro se.*  The court, therefore, reviews plaintiff's pleadings

and other papers liberally and holds them to a less stringent standard than those drafted

by attorneys.  Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir.

2007).  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro*

*se* complaint to less stringent standards than formal pleadings drafted by lawyers).

However, a *pro se* litigant's conclusory allegations without supporting factual averments

are insufficient to state a claim upon which relief can be based.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged.  See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983); Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

The exhaustion of administrative remedies is a jurisdictional prerequisite to instituting an action in federal court under both the Rehabilitation Act and Title VII. Woodman v. Runyon, 132 F.3d 1330, 1341 (10th Cir. 1997) (Rehabilitation Act); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996) (Title VII).  It is "the plaintiff's burden . . . to establish the court's subject matter jurisdiction by a preponderance of the evidence." Southway v. Central Bank of Nig., 328 F.3d 1267, 1274 (10th Cir. 2003).

Contact with an EEO counselor is required within 45 days of each discrete discriminatory action.  Baltazar v. Shinseki, 2011 WL 2607154, at *4 (D. Colo. July 1, 2011).  In addition, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (internal quotation marks omitted).  "Each discrete incident of [discriminatory] treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted."

Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003). "A claimant must file an

administrative charge of discrimination for each individual discriminatory or retaliatory

act." West v. Wynne, 2007 WL 2116381, at *5 (D. Colo. July 19, 2007) (citing Martinez

v. Potter, 347 F.3d at 1211).

### ADA Claim

Defendant first correctly asserts that as a federal employee, plaintiff does not

have standing to bring an ADA claim. "In the Tenth Circuit, section 501 of the

Rehabilitation Act, 29 U.S.C. § 791, provides a federal employee's exclusive remedy for

disability discrimination." Mattson v. Chertoff, 2009 WL 564289, at *2 (D. Colo. Mar. 5,

2009) (citing Williams v. Widnall, 79 F.3d 1003, 1005 (10th Cir. 1996)). "The

Rehabilitation Act extends the 'remedies, procedures and rights' available under Title

VII, 42 U.S.C. § 2000e-16, to federal employees with disability discrimination claims. 29

U.S.C. § 794a(a)(1)." Id. Therefore, plaintiff's ADA claim should be dismissed.

### Non-exhaustion of Disability Discrimination Claim

Defendant next asserts that the plaintiff failed to exhaust administrative remedies

with respect to his disability discrimination claim. This court finds that the plaintiff's May

2009 and June 2007 EEOC administrative claims did not concern any allegations that

he was discriminated on the basis of disability. See Docket No. 42-1 at 1 (Dismissal of

Formal EEO Complaint filed 5/12/2009 - noting plaintiff's alleged discrimination "based

on Race (African American), Sex (Male), and Retaliation (prior EEO activity) in that you

were subjected to a hostile work environment which resulted in the eventual

constructive termination of your employment on September 17, 2007."); Docket No. 42-

13

1 at 6 (May 2009 EEO Dispute Resolutions Specialist's Inquiry Report which did not

check off physical or mental disability); Docket No. 42-3 (June 15, 2007, Final Agency

Decision regarding "alleged discrimination based on Race (Black), Color (Unspecified),

and Retaliation (prior EEO Activity) in that since on or about the week of April 9, 2007,

you were subjected to a hostile work environment when appropriate action was not

taken when you reported inappropriate sexual conduct and the use of racist and sexist

comments."). Therefore, plaintiff's disability claims should be dismissed.

**Non-exhaustion of Title VII Claim**

Next, defendant asserts that the plaintiff's Title VII claims should be dismissed

because he failed to exhaust administrative remedies.  More specifically, defendant

asserts that plaintiff did not meet with an EEOC counselor within 45 days of the alleged

discriminatory actions alleged in the May 12, 2009, EEOC claim.  Baltazar v. Shinseki,

2011 WL 2607154, at *4 (D. Colo. July 1, 2011).  "The regulations governing complaints

of employment discrimination against federal agencies require that prior to filing a

formal complaint, an aggrieved person must file an informal complaint with the EEO

counselor of the employer agency within forty-five days of the alleged act of

discrimination or of the effective date of the challenged personnel action."  Sizova v.

National Instit. of Standards & Tech., 282 F.3d 1320, 1323 (10th Cir. 2002) (citing 29

C.F.R. § 1614.105(a)).

Here, plaintiff's employment with the USPS was terminated on September 17,

2007, and defendant notes that according to the plaintiff's own contentions, he did not

contact an EEOC counselor until December 2008, over one year after the allegedly

discriminatory act.  See Docket No. 42-2 at 4, n.1 (EEOC decision which states, "The

14

EEO Counselor's report indicates that complainant contacted the EEO Office on January 2, 2009.  However, on appeal, complainant asserted that he called the agency's telephonic complaint line in December 2008.").  Plaintiff thus did not exhaust his administrative remedies with respect to his constructive discharge/termination and "post-employment" claims.

Furthermore, defendant points out that plaintiff never amended or added the charge of retaliatory discharge claim to his 2007 EEOC administrative claim.  Plaintiff appears to assert he did not need to amend or add the retaliation claim, arguing in his Response, "Claims of retaliation are construed to be within the scope of prior EEOC claims, and therefore filing a second claim is unnecessary."  (Docket No. 48 at 9).  Plaintiff cites Hill v. United States Gen. Servs. Adminin., 2008 WL 4371761, at *5 (D.N.J. Sept. 17, 2008), in support of this argument, but he incorrectly attributes a quote therefrom to the Tenth Circuit, rather than the Third Circuit, stating "the Tenth Circuit . . . recognizes a modification to the exhaustion requirement."  He contends:

> Plaintiff's claims of retaliation are based on the USPS's 2007 refusal to honor his reassignment/transfer and retaliation with regards to his post-employment disability claims and OWCP filing, which all fall within the scope of his 2007 EEOC complaint because the EEO investigation had not been concluded and a final agency decision had not been issued by June 28, 2009, when the USPS denied Plaintiff's second EEOC complaint. Therefore, the ongoing 2007 EEO investigation could reasonably be expected to include later charges that grow out of the initial charge of discrimination dated June 15, 2007.  Plaintiff was not further obligated to exhaust his administrative remedies as they relate to this claim.

(Docket No. 48 at 10).  However, the "continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers" has been abrogated by Morgan, 536 U.S. at 110-113, and has been replaced "with the teaching that each

discrete incident of such treatment constitutes it's own 'unlawful employment practice'

for which administrative remedies must be exhausted."  Martinez v. Potter, 347 F.3d

1208, 1210 (10th Cir. 2003).  "The rule is equally applicable . . . to discrete claims based

on incidents occurring *after* the filing of Plaintiff's EEO complaint."  Id. at 1210-11.  See

King v. Gonzales, 186 Fed.Appx. 675, 676 (7th Cir. 2006) (Plaintiff "had not exhausted

his administrative remedies" because "[h]is charge of discrimination filed with the EEOC

did not mention retaliation, and although he could have added to that charge he needed

to initiate the process within the agency by contacting an EEO counselor within 45 days

of any supposedly retaliatory act.").

       In sum, this court finds that the plaintiff failed to exhaust his administrative

remedies with respect to his retaliatory/discriminatory discharge/constructive termination

and post-termination actions.  Therefore, plaintiff's Title VII claim with respect to such

claims should be dismissed.

               **Statute of Limitations Regarding Title VII Claim**

       A federal employee is required to file a discrimination action within 90 days of

receiving a right-to-sue notice from the EEOC.  42 U.S.C. § 2000e-16(c).  Conkle v.

Potter, 352 F.3d 1333, 1336 (10th Cir. 2003).  This ninety-day filing requirement is a

condition precedent to suit.  Id. at 1336 n.5.

       Here, defendant asserts that the plaintiff's Title VII claims which arise from the

2007 EEOC administrative claim should be dismissed as untimely.  Defendant notes

that the Second Amended Complaint contains several allegations of discrimination as

well as hostile work environment allegations that took place between 2006 and 2007,

which mirror his June 15, 2007, EEOC administrative claim.  Plaintiff, however, did not

16

initiate a civil suit within 90 days after the USPS issued its final agency decision on that claim on November 29, 2007.  In that decision, plaintiff was explicitly advised that he had the right to file a civil action in this court or appeal to the EEOC within 90 days. (Docket No. 42-3 at 15).  Plaintiff, however, did not file an action within 90 days but instead filed a second administrative claim against the USPS over a year and one half later on May 12, 2009.  That claim was denied on May 28, 2009, on the grounds that it was identical to his 2007 administrative claim.  Plaintiff was informed in that denial that "a Final Agency Decision was issued on November 29, 2007 closing your complaint with a finding of no discrimination."  (Docket No. 42-1 at 2).  Defendant notes that plaintiff did not bring an action in this court until he filed this action on April 26, 2010.  Therefore, defendant asserts that plaintiff's claims which arise from the 2007 EEOC administrative claim are untimely.

Plaintiff, however, argues that his claims pertaining to the 2007 EEOC complaint are not untimely because the Final Agency Decision "was not delivered to Plaintiff." (Docket No. 48 at 6).  He asserts that the USPS was made aware of his change of address from Aurora, Colorado, to Falls Church, Virginia (Docket No. 48 at 7), but the Final Agency Decision was mailed to Aurora.  Consequently, plaintiff contends that his 2007 claim "was never officially closed, and is still open and available to receive new allegations, which are includable in the complaint.  Therefore, there is neither untimely filing nor failure to exhaust administrative remedies, under Title VII or the Rehabilitation Act of 1973."  (Docket No. 48 at 8).

Defendant, however, has shown that the agency had updated plaintiff's mailing address to reflect his Falls Church, Virginia, address before the Final Agency Decision

was mailed to the plaintiff.  (Docket No. 49-2, Sundquist Aff. ¶¶ 4-5).  Moreover, based

upon the USPS's established protocol, that decision was sent to the plaintiff's Falls

Church address (Docket No. 49-2, Sundquist Aff. ¶¶ 4-5), and there is no notation or

record that it was returned as undeliverable, addressee moved, or address unknown.

(Docket No. 49-3, Cedola Aff. ¶¶ 3-4; Docket No. 49-4, Munoz Aff. ¶ 4).

Based upon the above, it is recommended that the Title VII claims which arise

from the 2007 EEOC administrative claim be dismissed as untimely.

**Laches**

Defendant further asserts that the plaintiff's Title VII claims should be dismissed

pursuant to the doctrine of laches.  Defendant asserts that by May 28, 2009, plaintiff

was on notice that the November 29, 2007, Final Agency Decision was issued.  Even if

plaintiff could be excused from his obligation to file within 90 days of November 29,

2007, defendant contends that the plaintiff should have at least filed his Title VII suit

within 90 days of May 28, 2009, but he chose not to pursue this claim in federal court

and instead continued to pursue his 2009 EEOC administrative claims, which according

to defendant "expended agency resources and further removed Defendant's witnesses

memory of the alleged underlying events."  (Docket No. 49 at 5).  Defendant contends

that plaintiff has alleged no plausible facts in the Amended Complaint to meet his

burden to avoid the applicability of the doctrine of laches, and accordingly, his Title VII

claims should be dismissed.

"[A] party may not be 'entitled' to relief if its conduct of the cause has improperly

and substantially prejudiced the other party.'"  Albemarle Paper Co. v. Moody, 422 U.S.

405, 424 (1975).  "Employers have recourse when a plaintiff unreasonably delays filing

a charge. . . .  [A]n employer may raise a laches defense, which bars a plaintiff from

maintaining a suit if he unreasonably delays in filing a suit and as a result harms the

defendant." Morgan, 536 U.S. at 121.  "This defense requires proof of (1) lack of

diligence by the party against whom the defense is asserted, and (2) prejudice to the

party asserting the defense." Id. at 121-22.  Here, there is evidence of lack of diligence

by the plaintiff, but defendant has not at this point made any showing of prejudice.

Without more, this court cannot recommend that the plaintiff's Title VII claims be

dismissed on the basis of the equitable defense of laches.

### Preemption

This court further finds that plaintiff's remaining non-Title VII claims should be

dismissed as they are preempted by Title VII.  "When the same set of facts supports a

Title VII claim and a non-Title VII claim against a federal employer, Title VII preempts

the non-Title VII claim." Mathis v. Henderson, 243 F.3d 446, 451 (8th Cir. 2001) (quoting

Pfau v. Reed, 125 F.3d 927, 933 (5th Cir. 1997)).  "The crucial administrative role that

each agency together with the Civil Service Commission was given by Congress in the

eradication of employment discrimination would be eliminated by the simple expedient

of putting a different label on (the) pleadings. . . .  It would require the suspension of

disbelief to ascribe to Congress the design to allow its careful and thorough remedial

scheme to be circumvented by artful pleading." Brown v. General Servs. Admin., 425

U.S. 820, 833 (1976) (internal quotations and citation omitted).  Title VII "provides the

exclusive judicial remedy for claims of discrimination in federal employment." Id. at 835.

This court also finds no merit to plaintiff's contention that Title VII is not the

exclusive remedy for alleged discrimination in the federal workplace and he can sue co-

employees or supervisors personally in tort for damages because they are guilty of

"highly personal wrongs."  Examples plaintiff gives of such "highly personal wrongs"

include defamation, harassing phone calls, physical abuse, and forcible rape of a

subordinate by a supervisor.  See Stewart v. Thomas, 538 F. Supp. 891, 893 (D.D.C.

1982) (federal employee who has brought a Title VII claim is not precluded from suing

for "a highly personal violation" that goes beyond discrimination).  Here, however,

plaintiff has not alleged in his Second Amended Complaint that he himself was the

subject of any such "highly personal wrongs" and thus would not fall under any such

exception.

 Contract Claims.  More specifically, with respect to any breach of contract claims,

defendant further correctly asserts that the plaintiff's contract and quasi-contractual

claims are preempted by Title VII.  See Blitzer v. Potter, 2005 WL 1107064, at *18

(S.D.N.Y. May 6, 2005) (USPS employee's contract claim dismissed because it was

"largely duplicative of his Title VII claim and thus is preempted"); Holmes v. F.A.A., 1999

WL 771594, at *3 (D.N.J. Sept. 29, 1999).  A review of the Amended Complaint shows

that these claims are grounded in the same operative facts as the plaintiff's Title VII

claim.  Therefore, this court finds that they are preempted and should be dismissed.

 The court notes that plaintiff argues that these claims should not be dismissed

because "independent contractors, employed by NEEOSIO, are workers who performed

EEOC services for the defendant, USPS."  (Docket No. 48 at 11-12).  Plaintiff contends

that his breach of contract claim alleges "that USPS misclassified its EEOC workers, as

independent contractors, when they [sic] in are in fact employees."  (Docket No. at 12).

As noted by the defendant, however, these claims are not contained in the Amended

Complaint.  Plaintiff has not further amended his pleading to add any independent

contractors as parties.  To the extent plaintiff's inclusion of new allegations in his

Response could be construed as a potential request to amend his pleading, see

Martinez v. Potter, 347 F.3d at 1211, such an amendment would be untimely.  (See

Docket No. 39, Scheduling Order at 4, deadline for amendment of pleadings was May 2,

2011).

Defendant also correctly asserts in a footnote that the plaintiff's intentional

interference with contractual relations tort claim should also be dismissed because the

United States retains immunity for claims arising from "interference with contractual

rights."  28 U.S.C. § 2680(h).  See Mecca v. United States, 2009 WL 4268365, at *2-5

(D. Colo. Nov. 20, 2009), aff'd, 389 F. App'x 775 (10th Cir. July 26, 2010).

Constitutional and Federal Claims.  This court also agrees with the defendant

that plaintiff's state and federal constitutional claims, and those brought pursuant to 42

U.S.C. §§ 1981, 1983, and 1985, should be dismissed.  As the Tenth Circuit recently

stated in an unpublished ruling:

> Because [plaintiff] was a federal employee, his claims implicate . . . distinct
> lines of federal preemption/remedial exclusivity.  Insofar as he complains
> of discrimination and associated retaliatory conduct, his exclusive remedy
> is provided by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-
> 16 . . . .  This precludes claims asserted under the civil rights statutes, see
> Ford v. West, 222 F.3d 767-772-73 (10th Cir. 2000); directly under the
> Constitution, Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997),
> and under state anti-discrimination law, Rivera v. Heyman, 157 F.3d 101,
> 105 (2d Cir. 1998); Schroder v. Runyon, 1 F. Supp.2d 1272, 1279 (D. Kan.
> 1998), aff'd, 161 F.3d a18, ---- (10th Cir. 1998) (unpub).

Pretlow v. Garrison, 420 Fed. Appx. 798, 801 (10th Cir. Mar. 22, 2011).  See Belhomme

v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997) (finding plaintiff's "claims under the

Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1981," were without merit because the

"claims under the Constitution fail because the Supreme Court has clearly stated that a

federal employee's only avenue for judicial relief from federal employment

discrimination is through Title VII. . . .  As a result, Title VII preempts any constitutional

cause of action that a court might find under the First or Fifth Amendment for

discrimination in federal employment.").  See also Tafoya v. Adams, 612 F. Supp. 1097,

1100 (D. Colo. 1985) (A "federal employee claiming job discrimination may proceed only

under Title VII, and may not secure additional remedies by proceeding also under §

1981.").

Defendant also correctly asserts that the plaintiff cannot bring an action pursuant

to § 1983 against an agency or employee of the federal government because the

statute applies only to persons acting under color of state law.  See Campbell v. Amax

Coal Co., 610 F.2d 701, 702 (10th Cir. 1979).  In addition, plaintiff's claim under the

Fourteenth Amendment fails because the Fourteenth Amendment does not apply to

federal government actions.  San Francisco Arts & Athletics, Inc. v. United States

Olympic Comm., 483 U.S. 522, 542 n.21 (1987).

### Non-exhaustion of Tort Claims

Defendant also asserts that the plaintiff's tort claims (i.e., negligence, intentional

infliction of emotional distress, intentional interference with a contractual relationship,

and "physical work related injuries") should be dismissed because the plaintiff failed to

exhaust those claims.  According to defendant, such claims would arise under the

Federal Tort Claims Act ("FTCA"), see 28 U.S.C. §§ 1346(b)(1), 2671-2680, but plaintiff

did not file the requisite administrative claim with the appropriate federal agency prior to

filing suit against the United States.  <u>See</u> 28 U.S.C. § 2401(b).  This court thus would

not have subject matter jurisdiction over such claims.  <u>Jackson v. United States</u>, 789 F.

Supp. 1109, 1110-11 (D. Colo. 1992).  Based on the findings above, this court need not

address this alternative basis for dismissal of these tort claims.

### Claims Against Defendants United States Department of Labor, Solis, Duce, Darling, and Rice

Finally, defendant asserts that the plaintiff's claims against [unserved] defendants

United States Department of Labor, Solis, Duce, Darling, and Rice should be dismissed.

As found above, plaintiff's non-Title VII claims should be dismissed against these

defendants.  Furthermore, they are improper parties in a Title VII action in which the

only proper defendant is the head of the agency or department in which the plaintiff was

employed.  <u>See</u> 42 U.S.C. § 2000e-16(c).  Therefore, it is recommended that the claims

against the unserved defendants and defendant Solis be dismissed pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii).

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that Defendant's Motion to Dismiss Pursuant to Fed. R. Civ.

P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) (Docket No. 42) be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

23

**and serve such written, specific objections waives *de novo* review of the**

**recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10<u>th</u> Cir. 1999); <u>Talley</u>**

**<u>v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: December 8, 2011             s/ Michael J. Watanabe_____
      Denver, Colorado                 Michael J. Watanabe
                                    United States Magistrate Judge